TEXAS EMPLOYERS INSURANCE ASSOCIATION V.
ESTHER LEWIS WERMSKE

No. A-8128. Decided July 12, 1961
Rehearing overruled October 3, 1961
(349 S. W. 2d Series 90)

*Underwood, Wilson, Sutton, Heare & Berry,* all of Amarillo, for petitioner.

*Linn & Helms,* of Spearman, for respondent.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This is a workmen's compensation case. The principal question here is whether good cause was shown for failure to file the claim for compensation within the six months' time prescribed by statute. The jury found that good cause did exist, and judgment was entered for the plaintiff. That judgment was affirmed by the Amarillo Court of Civil Appeals. 339 S.W. 2d 408.

Lowell Wermske was employed as an engineer by the Phillips Pipeline Company at its pumping station in Ochiltree County. Part of his duties was the care of a part of the grounds of the station. While he was on duty alone, he was making a device, from an oil drum, with which to spray weeds. The drum exploded as he was filling it with air under pressure. He was instantly killed. There is a question as to whether he intended to spray the weeds on the Phillips' tract or on his own adjoining land. We find it unnecessary to decide that question.

Wermske was killed on June 22, 1957. The period of six months provided for in the statute for filing a claim with the Industrial Accident Board begins to run on the date of the injury and not on any subsequent date. *Petroleum Casualty Co. v. Dean,* 132 Tex. 320, 122 S.W. 2d 1053 (1939). The claim was not filed earlier than February 10, 1959, some 20 months after the injury.[1] Thus, the claim was filed some 14 months late.

---

1. The notice and the claim are dated February 10, 1959. The Secretary of the Industrial Accident Board certified that the only notices that the board had with respect to Wermske "are contained in the attached transcript certified by me under date of April 24, 1959." The date of the receiving of the claim of February 10, 1959, does not appear with certainty.

Section 4a of Article 8307, Vernon's Texas Civil Statutes, says in part:

"For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to * * * the filing of the claim before the Board."

When this claim was filed with the Board, it was denied because it was filed too late and because "the evidence submitted to this board does not establish good cause for such delay up to the date of filing claim."

■ The evidence before the trial court on the "good cause," viewed most favorably to the plaintiff, was as follows: The plaintiff, Mrs. Wermske, the widow of the deceased workman, testified that after Wermske's death on June 22, 1957, she went to an attorney's office (naming him) to employ him to look after Wermske's estate. Thereafter a representative of the insurance company which carried the workmen's compensation visited her. He brought her some papers, which he said related to workmen's compensation, and he asked her to fill them out and mail them to him in Amarillo. She did so. In August, 1957, the representative returned to Mrs. Wermske's home, and told her that the company had refused to make payment. So in "the first part of August" of 1957, she employed the same attorney to handle her claim for workmen's compensation. Some four months then remained within which claim could have been filed in time. She testified that the attorney assured her that the claim had been filed. He assured her several times that her claim was being taken care of. The attorney did handle the estate. But "late in 1958," the attorney told her that he couldn't handle her case for compensation. He told her he did not have time to handle her business. She then employed her present attorneys on December 30, 1958, which was shortly after her final conversation with her first attorney.

On that same day, these new attorneys wrote the Board at Austin informing it of their power of attorney to represent Mrs. Wermske in claims for her husband's death in June of 1957. On January 8, 1959, the Board wrote the new attorneys that they had no record of any such claim; that none had been received or filed. Mrs. Wermske testified that up to this time, she thought her claim had been filed with the Board. After further correspondence with the Board, the new attorneys pre-

pared a claim, dated February 10, 1959, which was filed with the Board.

The attorney first employed by Mrs. Wermske testified that she came to his office about the first of July, 1957, following Wermske's death on June 22, 1957. He filed for letters of administration for her on her husband's estate. About the same time, she employed him to file claim for his death.

The attorney testified that he prepared a claim for filing. He was out of forms; so he typed up one himself. He did not personally file the claim with the Board. When asked if he mailed the claim to the Board at Austin for filing, he at first said that he did; that he did so in September or October of 1957. A copy of the claim he prepared was introduced in evidence. It is not dated.

When asked again whether he mailed the claim, he testified: "Yes, we did. Let me clarify that a little. You say did I deposit it. It was prepared for deposit and I can't just tell you that I actually myself carried it to the post office, or whether the girl did at the office, but it was prepared for mailing and left for deposit in the United States mail."

The letter was left on a desk for mailing. The girl who was his secretary was not called as a witness.

Over objection, the attorney was permitted to testify that thereafter a representative of the insurance company consulted him three times in March or April of 1958. The admissibility of this testimony is the subject of a point of error here; but we shall assume it to be admissible.

The attorney testified that he closed out Wermske's estate, but he was not sure when. It was six months to a year before the trial of this case. At that time, he testified, his employment for her was at an end: "On this claim, I told her from what it appeared that I would be unable to effect a collection or settlement." He further testified that he turned the file on Wermske's claim over to her new attorneys. There was no correspondence in the file. It contained no communication from the Board and no acknowledgement of a receipt of any claim prepared or filed by the first attorney.

Records of the Industrial Accident Board were introduced.

They reflected that no claim was received or filed concerning Wermske's death until the one prepared by the new attorneys, dated February 10, 1959. A diligent search had been made, but this was all that they had. There was no earlier claim. The earliest correspondence they had was dated December 30, 1958, containing the power of attorney for the new attorneys. Also introduced was a letter from the executive director of the Board to the new attorneys, dated January 8, 1959, starting that "we are unable to locate a record of the above-styled fatal injury. We are enclosing standard fatal forms for you to complete and return to this office on behalf of your client." This same executive advised the new attorneys on January 16, 1959, that the Board had received a letter from Phillips which stated in part, "This is to advise you that we have received no notice of any job-connected injury to this party."

When there is positive testimony that a letter has been enclosed in an envelope which is correctly stamped and addressed and is deposited in the mail, there is a rebuttable presumption that it was duly received. *Southland Life Insurance Co. v. Greenwade*, 138 Tex. 450, 159 S.W. 2d 854 (1942). Two witnesses in that case saw the claimant mail the letter in the post office.

The testimony here is not sufficient to raise that presumption. The attorney's testimony is that the claim was prepared for filing and left on his secretary's desk for mailing. There is no testimony that the claim was placed in an envelope which was properly stamped. But assuming that this is implied from his testimony, the attorney was unable to testify that he mailed the letter or that his secretary mailed it. The secretary did not testify in the case. Where the sender relies on office custom to support the inference of mailing, the majority rule is that there must be corroborating circumstances to support the inference that the custom has been carried out. See annotation, 25 A.L.R. 9, at 19, supplemented in 86 A.L.R. 541, at 544. Since the presumption is not raised, we need not review the evidence from the Board to the effect that the claim was never received, or the weight to be attributed to the fact that the attorney received no acknowledgment or other answer from the Board over a period of months.

■ We turn now to the question as to whether there is evidence of good cause for failure to file the claim as required by the statute.

The problem of the failure of an attorney to file a claim for compensation in time has been before this Court on several occasions. In *Petroleum Casualty Co. v. Dean,* 132 Tex. 320, 122 S.W. 2d 1053 (1939), the Texas employee, after injury, went to Mississippi. He there employed an attorney and relied upon him to file and prosecute his claim for compensation. The Mississippi attorney did not file the claim in time because he did not know the Texas period for the filing of claims was so short. He made two unsuccessful attempts to get Texas attorneys to handle the case for him. The claim was filed 11-½ months late[2] by a third Texas attorney who was engaged by the Mississippi attorney. This Court held that, as a matter of law, good cause did not exist for failure to file the claim within the time prescribed.

The Court did not write in terms of agency in the *Dean* case. But the legal result reached is that of agency: i.e., the loss of the claim because of the nonaction of the attorney acting (or failing to act) within the scope of his employment or agency. The opinion did not rest upon the basis of the prudence or imprudence of the claimant in relying on his Mississippi attorney, but upon the acts of the attorney himself.

There are cases which hold that this rule does not apply where the attorney deliberately acts to injure the client or is guilty of bad faith or fraud. None of these situations is alleged here, and we express no opinion thereon. The general rule is that the relationship of attorney and client is one of agency. Under this rule, the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents; and his neglect is equivalent to the neglect of the client himself. 5 American Jurisprudence 305, Attorneys at Law §78; 7 Corpus Juris Secundum 850 et seq., Attorney and Client §67. The holding in the *Dean* case is in accordance with these principles.

The *Dean* case was followed in *Garza v. United States Fidelity & Guaranty Co.,* 251 S.W. 2d 781 (error ref., n.r.e. 1952). The Court there said that it would pass over the time which expired before the claimant employed an attorney, but a delay of 9 months thereafter was not good cause as a matter

2. As a matter of fact, the Court held that the claim was already barred (within 9 months) before the Texas attorney was employed. He was employed approximately 2½ months before the claim was filed.

of law. The attorney in that case testified that he was pretty busy and did not know the employer carried workmen's compensation. He admitted, however, that he could easily have ascertained that fact by writing to the Board.

The agency theory is developed in *Great American Ind. Co. v. Dabney,* 128 S.W. 2d 496 (Tex. Civ. App. 1939). There the client testified that her attorney assured her that she was entitled to recover and that her claim had been filed. But the claim had not been filed. She believed and relied upon her attorney. She subsequently employed other counsel who filed her claim and her suit. The jury found that the first attorney *did* advise the plaintiff that she could recover and that her claim had been filed; that he later informed her she could not recover; that she used due diligence; and that these facts constituted good cause. It was held that, as a matter of law, there was no evidence of good cause for failure to file the claim for 29-½ months after the injury. Said the Court, "The neglect of Mr. O'Brien [the attorney] and the information he had or should have obtained by reasonable diligence was imputable to the appellee [the claimant] and would not constitute 'good cause' for not filing her claim." 128 S.W. 2d at 501. This point was squarely raised in this Court in an application for writ of error. The application was denied with the notation, "Dismissed W.O.J., Correct Judgment."

The cases involving the acts of an attorney or attorneys cited by counsel for Mrs. Wermske are the *Davis* and the *Hughes* cases. In *Traders & General Ins. Co. v. Davis,* 147 S.W. 2d 908, the injured employee was paid compensation for a period and entered into a settlement with the insurance company. Then he died. His mother thought further compensation was due. Soon after her son's death, she sent another son to consult a lawyer. He did so, and relayed the lawyer's advice to the mother. The jury made these findings: the lawyer told the son that no further valid claim existed; that the mother believed the lawyer and relied on his judgment; for this reason she did not sooner file a claim for compensation; and that this was good cause for late filing of the claim. The mother later employed a second attorney who filed the claim and brought suit. Judgment was for the claimant, the mother. The Court of Civil Appeals upheld the judgment based on the jury verdict. That court likened the case to one in which a claimant was erroneously told by a doctor that his injuries were trivial. On further appeal, this Court, in a per curiam opinion, stated that it was dismissing the writ of

error. The opinion then said, "* * * but in doing so we are not approving the holdings of the Court of Civil Appeals on the question as to whether or not the defendants in error [the claimants] plead or proved good cause for not filing their claim with the Industrial Accident Board within the time required by law." *Traders & General Ins. Co. v. Davis,* 136 Tex. 187, 149 S.W. 2d 88 (1941).

The per curiam opinion indicates at least a doubt in the mind of the Court as to the correctness of the opinion or the language or comparisons used in the opinion of the Court of Civil Appeals. The opinion of the Court of Civil Appeals is not binding on this Court, and its persuasiveness is lessened by the per curiam opinion.

In *Gulf Casualty Co. v. Hughes,* 230 S.W. 2d 293 (no writ, 1950), a jury verdict for the plaintiff in a workmen's compensation case was reversed and remanded for a new trial because the Court of Civil Appeals was of the opinion that the jury finding that the employee had been injured was against the great weight and preponderance of the evidence. In its opinion, that court also discussed "good cause" for failure to timely file a claim for compensation. The evidence showed that the claimant, over a period of time, went to two different attorneys who, after investigation, declined to accept employment. Considerably after the time for filing had expired, a third attorney accepted employment and filed the claim. The jury found that the plaintiff *tried to employ* and was *unable to employ* counsel until she got the third attorney; that her *inability to employ counsel* was the cause of her failure to file, and this constituted good cause for failure to file on time. The Court of Civil Appeals sustained the jury's "good cause" finding on the ground that there was evidence that the plaintiff exercised reasonable diligence in prosecuting her claim, citing *Hawkins v. Safety Casualty Co.,* 146 Tex. 381, 207 S.W. 2d 370. The *Hawkins* case does state the law of this State to the effect that the test for "good cause" is that of ordinary prudence: " * * * whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." But this rule must include not only the claimant but the agent of the claimant as we construe the *Dean* and *Dabney* cases set out above.

The *Hughes case,* discussed just above, did not reach this Court. No writ of error was applied for. On the question of

agency, it is argued that the *Hughes* case is consistent with the *Dean* and *Dabney* cases in this: the attorneys who declined to accept employment and who delayed the filing of the claim during the period of their study and investigation of the case were not agents of the claimant; they never accepted employment as agents. During this period, it was the prudence and diligence of the claimant alone in attempting to prosecute her claim which was to be tested,—not that of two attorneys who never accepted employment as her agents.

There is one other case along this line, not cited by either counsel in this case. That is *Texas Employers' Ins. Assn. v. Clark*, 23 S.W. 2d 405 (error dismissed, 1930). During the period following injury when the claimant was paralyzed and could not act for himself, his wife went to a firm of attorneys whom she employed to bring a suit at common law for damages against the employer, not a suit for workmen's compensation. They filed no claim for compensation. Later, a claim for compensation was filed, and the question was raised as to the failure of the attorneys to file the claim originally. Judge Hickman (who also wrote the *Dean* case, supra, after he became a member of this Court) wrote for the Court:

> "They [the attorneys] were not employed for that purpose [to file a claim and suit for workmen's compensation], and in no sense were they his attorneys and representatives [agents], save only as they might have had authority to bring a suit for damages on account of their employment by his wife." 23 S.W. 2d at 411.

Considering the cases set out above, we believe the law of this State to be that which is set out in the *Dean* and *Dabney* cases above: that an attorney employed to prosecute a claim for workmen's compensation is the agent of the client, and his action or nonaction within the scope of his employment or agency is attributable to the client. Where the Legislature has said the claim shall be filed within 6 months after the injury, the failure to file the claim for 20 months under the facts and circumstances here present does not constitute good cause for the late filing as a matter of law.

The judgments of the courts below are reversed and judgment is here rendered for the petitioner.