DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I respectfully dissent from the majority opinion’s reversal of the Tax Court’s decision to tax the clients on their attorney’s fees paid out of recovery of punitive damages and interest thereon. I concur in the balance of the majority’s decision, however, for the reasons stated in its opinion.
In my opinion, Cotnam v. Commissioner, 263 F.2d 119 (5th Cir.1959), based in part on Alabama law, is distinguishable and not controlling in the present case based in part on Texas law. In Cotnam a majority of this court’s panel held that the amount of a contingent fee paid out of a taxpayer’s recovery in a breach of contract *368 action was not income to the taxpayer. The sum was held to be income to the attorneys but not to Mrs. Cotnam, the taxpayer, for the following reasons:
The Alabama Code provides: “The attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them”. In construing this statute the Alabama courts have given full effect to the statute. Attorneys have the same rights as their clients. Western Railway v. Foshee, 1913, 183 Ala. 182, 62 So. 500; Denson v. Alabama Fuel & Iron Co., 1916, 198 Ala. 383, 73 So. 525. Under Alabama law, therefore, Mrs. Cotnam could never have received the $50,365.83, even if she had settled the case directly with the Bank.
In United States Fidelity & Guaranty Co. v. Levy, 5 Cir., 1935, 77 F.2d 972, 975, Judge Hutcheson, speaking for the Court, held that the Alabama statute creates a charge “in the nature of an equitable assignment ... (or) equitable lien” in the cause of action. An attorney “holding such an interest has an equity in the cause of action and the recovery under it prior to that of the defendant in the judgment to exercise a right of set-off accruing to him after the attorney’s interest had attached.”
The facts in this unusual case, taken with the Alabama statute, put the taxpayer in a position where she did not realize income as to her attorneys’ interests of 40% in her cause of action and judgment.
Id. at 124 (footnote quoting 46 Code of Alabama § 64 (1940) omitted).
Under Texas law attorneys do not have the same right and power as their clients in the clients’ causes of action, suits, judgments or decrees, to enforce attorney’s liens, interests or contingency fee claims against the defendants. In Dow Chemical Company v. Benton, 163 Tex. 477, 357 S.W.2d 565, 567-68 (1962), the Texas Supreme Court held that an attorney may not prosecute a cause of action on his own behalf to secure a contingent fee after his client, the original plaintiff, has been properly dismissed from the case for refusal to appear for deposition. ' The contingent fee contract involved there was virtually identical to the one in the present case.[1] The client had agreed to “sell, transfer, assign and convey to my said attorneys the respective undivided interests in and to my said claim ... and to any judgment or judgments that I may obtain or that may be rendered to me or my heirs and assigns.” Id. at 566. The Texas Supreme Court explained:
[T]he lawyer’s rights, based on the contingent fee contract, are wholly derivative from those of his client. The attorney-client relationship is one of principal and agent. Texas Employers Ins. Ass’n v. Wermske, 162 Tex. 540, 349 S.W.2d 90 (1961). Therefore, the rights of each in a cause of action during the existence of that relationship are necessarily dependent upon and inseparably interwoven with the other. Neither lawyer nor client should be permitted to select the good features of his contract and reject the bad. There is but one cause of action. Our decisions uphold an agreement to assign a part of the recovery on the cause of action to the attorney. But *369 we have never held that the cause of action is divisible and may be tried for only a percentage of the cause of action.
... [A]s long as the attorney-client relationship endures, with its corresponding legal effect of principal and agent, the acts of one must necessarily bind the other as a general rule.
We do not reject the rationale that a properly worded contingent fee contract may effect an assignment of part of the recovery and a part of a cause of action to the attorney. However, the attorney who has received such an assignment invariably elects to litigate his interest simultaneously with his client’s interest, in his client’s name, and elects implicitly to be bound by any judgment properly rendered in the case. We hold that so long as the existing agency relationship is not terminated, as by the opposite party’s buying out the client’s interest, the attorney must be bound by that election.
Id. at 567-68.
Consequently, under Texas law, unlike that of Alabama, an attorney is not granted by statute the same right and power as his client over his client’s cause of action and judgment for the independent enforcement of his attorney’s fee claim. Under Texas law, even when the attorney has been assigned an ownership interest in his client’s cause of action, his rights remain wholly derivative from those of his client; the attorney-client relationship remains one of principal and agent; the rights of the lawyer and the client are inseparable, interdependent and interwoven; the client’s action is indivisible and may not be tried for only a percentage of the cause of action. As long as the attorney-client relationship endures, the acts of one must necessarily bind the other as a general rule. The attorney who has received an assignment of a part of his client’s cause of action is deemed by law to have elected to litigate his interest simultaneously with his client’s interest, in his client’s name, and to be bound by any judgment properly rendered in the case. So long as the attorney-client relationship is not terminated by the client’s actions purporting to settle the case with the opposite party litigant, the attorney is bound by that election.
For these reasons and others assigned by the Tax Court or acknowledged in the majority’s candid opinion, I conclude that the taxpayers in the present case did not by virtue of their attorney-client contract divest themselves of part of their interests in the claim, or vest a legal, independently enforceable ownership interest in that claim in their attorneys. Accordingly, the taxpayers received as income the portions of the settlement consisting of punitive damages and interest that were earmarked for the payment of their attorney’s fees, and I believe that the taxpayers must pay taxes on those proceeds.[2] “[T]he taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, canfnot] escape taxation because he has not himself received payment of it from his obligor.... [Taxation] may occur when he has made such use or disposition of his power to receive or control the income as to procure in its place other satisfactions which are of economic worth.” Helvering v. Horst, 311 U.S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75 (1940).

. In the present case, in addition to providing for payment of expenses, the contingent fee agreement between the taxpayers and their attorneys provided in relevant part:
I/We,the undersigned, hereinafter called CLIENTS, employ the law firm of BRAN-TON & HALL, P.C., hereinafter called ATTORNEYS, understanding that the legal services rendered and to be rendered will be by ATTORNEYS of the professional corporation at its discretion. CLIENTS hereby sell, convey, and assign to BRANTON & HALL, P.C., as consideration for said services a forty percent (40%) interest in and to any and all causes of action, claims, demands, judgment, or recoveries which CLIENTS may hold or receive because of damages and injuries received and sustained by DR. .SUDHIR SRIVASTAVA and DR. ELIZABETH PASCUAL as a result of the television' broadcasts on Channel 5 in February, 1985.

. In response to footnote 33 of the majority opinion, out of an abundance of caution, it should be noted that this case involves only the question of whether a client may avoid payment of income taxes on his recovery of Texas noncompensatory punitive damages which this court held not excluded from the client's gross income by I.R.C. § 104(a)(2). See Estate of Moore v. Commissioner, 53 F.3d 712 (5th Cir.1995). This case does not affect § 104(a)(2)’s exclusion from gross income of a client's recovery of compensatory damages for personal injuries or sickness or the exclusions from gross income of punitive damages by I.R.C. § 104(c)(1996).